UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-14079-Civ-MOORE
MAGISTRATE JUDGE P.A. WHITE

REGINALD HOLSTON,                    :

    Petitioner,                      :

v.                                   :        REPORT OF
                                              MAGISTRATE JUDGE
WALTER A. McNEIL,                    :

    Respondent.                      :
_____

## I. Introduction

Holston, who is presently confined at South Bay Correctional Institution in South Bay, Florida, has filed a *pro se* petition for writ of habeas corpus pursuant to Title 28, Section 2254, attacking his conviction and sentence in case numbers 06-698, 06-2457, 06-3766, and 06-2877, entered in the Nineteenth Judicial Circuit Court for Martin County.[1]

This cause has been referred to the undersigned for consideration and report pursuant to Title 28, Section 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The Court has before it the petition for writ of habeas corpus (DE# 1), Holston's memorandum addressing limitations (DE# 13), the Respondent's response to an order to show cause (DE# 22), appendixes of exhibits (DE# 28, 29), and Holston's reply (DE# 31).

_____

[1] The cases originated in Collier (Twentieth Judicial Circuit), and Martin and St. Lucie Counties (Nineteenth Judicial Circuit). They were transferred to Martin County for a consolidated trial.

Construing the *pro se* movant's arguments liberally, <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), he appears to raise the following claims in his Section 2254 petition:

1. His motion to suppress should have been granted because photo arrays were unduly suggestive and violated the Fourteenth Amendment and because a detective presented perjured testimony at the suppression hearing;

2. The State failed to prove a "scheme to defraud" in violation of the Fourteenth Amendment;

3. The State failed to prove third-degree grand theft in the Port St. Lucie cases, in violation of the Fourteenth Amendment;

4. The State failed to prove third-degree grand theft in the Ft. Pierce cases, in violation of the Fourteenth Amendment;

5. The State failed to prove third-degree grand theft in the Naples case, in violation of the Fourteenth Amendment;

6. The State court's application of <u>Faretta</u>[2] was objectively unreasonable when the Collier County Circuit Court allowed Holston to transfer venue to Martin County without a valid waiver of counsel;

7. The State court's application of <u>Faretta</u> was objectively unreasonable when the St. Lucie County Circuit Court allowed Holston to extra-judicially waive venue from St. Lucie County to Martin County for trial without an adequate hearing;

8. The St. Lucie County informations were fatally

---

[2] <u>Faretta v. California</u>, 422 U.S. 806, 833 (1975).

defective in violation of due process;

9.    The trial court's failure to instruct the jury that
      it was required to find Holston engaged in "one
      scheme or course of conduct" as an element of the
      offense violated due process; and

10.   The trial court was biased and refused to recuse
      himself.

Holston requests an evidentiary hearing only as to Claim (1).
See (DE# 1 at 5).

## II. Procedural History

Holston was charged with multiple offenses related to taking
high-priced items from the electronics departments of Wal-Mart
stores in St. Lucie County (Port St. Lucie and Fort Pierce),
Collier County  (Naples), and Martin County (Stuart) on eleven
different occasions.

### Charges

#### St. Lucie County (Port St. Lucie & Ft. Pierce)

In case **06-2457**, Holston was charged with third-degree grand
theft of $300 or more from the Port St. Lucie Wal-Mart on December
20, 2005. (DE# 28-7 at 7). In case **06-3766**, he was charged with
second-degree grand theft of between $20,000 and $100,000 from the
Ft. Pierce Wal-Mart on March 25, 2006. (DE# 28-8 at 24).

#### Collier County (Naples)

In case **06-2877**, Holston was charged with one count of third-
degree grand of $300 or more from the Naples Wal-Mart between March
14 and 15, 2006. (DE# 28-9 at 18).

#### Martin County (Stuart)

In case **06-698**, Holston was charged with four counts of third-

degree grand theft for the Stuart Wal-Mart on January 28, 2006, February 3, 2006, March 6, 2006, and March 28, 2006 (Counts 1-4) and one count of organized fraud between $20,000 and $50,000 (Count 5). (DE# 28-1 at 20).

## Motions to Transfer and Waive Venue

St. Lucie County

On October 9, 2007, Holston filed a motion to transfer venue to Martin county for a consolidated trial. (DE# 28-7 at 78, 90). He filed a waiver of venue on October 19, 2007. (DE# 28-7 at 96). The court granted the order transferring venue and entered an amended order on November 1, 2007, transferring venue in cases 06-2457 and 06-3766 to Martin County. (DE# 28-7 at 94, 99); (DE# 28-6 at 12).

Collier County

Holston filed a motion to waive venue in Collier County on October 23, 2007. (DE# 28-9 at 15). On November 2, 2007, Judge Krier held a telephonic hearing on Holston's motion while he was incarcerated in another jurisdiction. (DE# 29-1 at 46). The court explained the motion to waive venue requested case 06-2877 be transferred to Martin County. (DE# 29-1 at 47). Holston agreed he wanted his case transferred to Martin County to be tried before Judge Shcack. (DE# 29-1 at 48). The court entered an order granting the motion to transfer to Martin County on November 5, 2007, and entered an amended order on November 15, 2007. (DE# 28-9 at 22, 24).

Martin County

The Florida Supreme Court entered an order assigning Judge Larry Schack of the Nineteenth Judicial Circuit as a judge of the Twentieth Judicial Circuit for the purposes of trying Holston's Collier County case, number 06-2877. (DE# 28-6 at 24).

<u>**Relevant Pretrial Proceedings**</u>

<u>St. Lucie County</u>

On March 23, 2007 at Holston's first appearance in St. Lucie County (cases 06-2457), Judge McCann informed him of his right to counsel, and that he could have one appointed if indigent:

> THE COURT: Okay. So all right, well, this is your first appearance. You have the right to counsel on these charges. If you don't have an attorney and you can't afford one then one needs to be appointed to represent you. Do you have a lawyer?
>
> MR. HOLSTON: No sir.
>
> THE COURT: Can you afford one?
>
> MR. HOLSTON: No sir.
>
> THE COURT: Want me to appoint one for you?
>
> MR. HOLSTON: No sir.
>
> THE COURT: You don't want – you want to represent yourself?
>
> MR. HOLSTON: Yes sir.
>
> THE COURT: You do, huh?
>
> MR. HOLSTON: Yes sir.
>
> THE COURT: have you ever tried a case before?
>
> MR. HOLSTON; Yes, I – I'm currently proceeding pro se in all of my cases, Judge. I'm preparing to proceed today.
>
> THE COURT: You're prepared to proceed today?
>
> MR. HOLSTON: Yes sir.

(DE# 28 at 8-9).

Holston rejected the court's offer for counsel on the second case as well (06-3766). (DE# 28 at 11).

In a more detailed hearing later that day, Holston explained

he is twenty-six years old, has a GED and a paralegal certificate, and has his own legal research business. (DE# 28 at 44). The court described the pitfalls of self-representation  including limited access to state attorney and applicability of the rules of evidence, the benefit of having a lawyer, and explained Holston would receive no special treatment. (DE# 28 at 47-51). The following transpired:

> THE COURT: Okay. You think you understand all the advantages and dangers and disadvantages that I just told you about?
> MR. HOLSTON: Yes, sir, Judge.

(DE# 28 at 51).

Further, the court offered to appoint counsel at any time, or to provide stand-by counsel to assist him during trial:

> THE COURT: And anytime throughout these proceedings if we go to trial, if you decide you want a lawyer you need to tell me and I'll stop the proceedings and we'll talk about it and I'll appoint you a lawyer. I can even appoint you a lawyer to - to sit with you and give you advice, but that lawyer will not be allowed to argue for you or ask questions for you or make objections for you. The lawyer can only be there for you to assist you if - if you'd like me to do that. Would you like me to do that?
> MR. HOLSTON: To appoint stand-by counsel or -
> THE COURT: Yes.
> MR. HOLSTON: I would - I would like stand-by counsel if you - if you would do that, Judge. That I would like you to do.

6

(DE# 28 at 52-53).

The court found Holston knowingly and intelligently waived his right to counsel:

> THE COURT: ... For the -- at this point in the proceedings I find that the defendant is fully aware of the dangers and disadvantages of representing himself and -- and I've also advised him as best I could of those dangers and disadvantages and the advantages as well of -- of being represented by an attorney that is a member of the bar and skilled in the practice of criminal law. But I find that he has made a -- a coherent and informed decision not to be represented by counsel in this proceeding. And I have advised him that I will continue to give him that option to seek counsel as we go along at every critical stage of the proceedings.

(DE# 28 at 54).

Docket notes for March 23, 2007 indicate that Judge McCann appointed an assistant public defender to sit second seat. (DE# 28-8 at 38). Counsel filed a notice of discovery on Holston's behalf. (DE# 28-7 at 60). Counsel moved to withdraw, arguing he was appointed as co-counsel and hybrid representation is not allowed by rules, but the court denied the motion explaining he was not co-counsel but was only appointed to give Holston advice, if desired. (DE# 28-7 at 65). Holston filed a motion to dismiss court-appointed counsel. (DE# 28-7 at 82).

Martin County

On September 7, 2006, Holston showed up late for his arraignment. He explained he did not want an attorney and would

7

like to proceed "pro se." (DE# 28-3 at 83). When the court asked why, Holston said he has constitutional right to do so. The court began a <u>Faretta</u> hearing, however, Holston disclosed he had an active, contagious staph infection. (DE# 28-3 at 86, 91). The court ended the proceeding out of concern for those present in the courtroom and asked for fax from Holston's doctor explaining the health risk to others, and reset the hearing for November 22, 2006, in open court. (DE# 28-3 at 98).

On November 22, 2006, the arraignment hearing continued. Holston again stated his desire to proceed *pro se*, cited <u>Faretta</u>, and explained he was better prepared than a public defender. (DE# 28-3 at 104-07). He complained about the lack of access to law library and the court explained he would not have same access as an attorney, would be treated the same as an attorney in court, and that the court was not permitted to assist him. (DE# 28-3 at 114, 117). The court entered a not guilty plea on Holston's behalf when Holston attempted to dismiss the information as "dilatory." (DE# 28-3 at 6). Then the following transpired:

> THE DEFENDANT: As far as – I have one more issue that I would like the Court to address so that we can kill two birds with one stone. Uh, the failure to appear, the Court reinstated – gave me another bond for 50,000, but under Rule 3.131 the Court must first make a determination if it was willful and I would like the Court to make that determination today. Because I believe that (indiscernible) I served notice on the State and the clerk has a record of the hearing, because if the Court remembers, uh, I had staph that day. And I guess the Court like, you know, didn't want anybody to get – to get staph, because I was hospitalized when I came for the

first arraignment. That's how everything got mixed up. And I was (indiscernible) so quickly, Judge, you just basically said, I'm going to reset this and you went and called the doctor, Dr., uh, Dawson. And –

THE COURT: **Well actually sir, you came through the door.**

THE DEFENDANT: Yes sir.

THE COURT: **Went out of your way –**

THE DEFENDANT: Uh-huh.

THE COURT: **To shake hands with my bailiff.**

THE DEFENDANT: Uh-huh.

THE COURT: **And then came up to the podium to tell me –**

THE DEFENDANT: Uh-huh.

THE COURT: **That anyone you touch --**

THE DEFENDANT: Uh-huh.

THE COURT: **Was subject to potential --**

THE DEFENDANT: Uh-huh.

THE COURT: **Contagion by mercer.**[3]

THE DEFENDANT: Yes sir.

THE COURT: **So yes, I wanted to find out what needed to --**

THE DEFENDANT: Yes sir.

THE COURT: Be necessary -- **what was necessary in order to protect everybody in the courtroom.**

THE DEFENDANT: Yes Judge.

THE COURT: Apparently you're over that now.

THE DEFENDANT: Yes sir.

THE COURT: Okay.

THE DEFENDANT: I wasn't denigrating that fact, Judge.

THE COURT: Okay.

THE DEFENDANT: I was merely stating that once the Court

---

[3] This appears to be a reference to "MRSA," or, methicillin-resistant staphylococcus aureus.

> said that it was resetting the court date, I was never
> given notice in open court because I was ushered out.
> THE COURT: Okay, what are you asking for at this point?
> THE DEFENDANT: I'm asking that my -- I'm asking an order
> -- I'm presenting the facts to the Court so the Court can
> make a determination if the -- if the failure to appear
> at a subsequent hearing was willful.

(DE# 28-4 at 8-9) (emphasis added).

On November 27, 2006, Holston filed a motion to disqualify
Judge Schack because he had removed Holston from the courtroom on
September 7, and, stated at the November 22 hearing that Holston
went out of his way to shake the bailiff's hand while infected with
staph. According to Holston, these events caused him to question
the judge's impartiality. He also complained the court required the
parties to be prepared and know law before they come to court, had
failed to find out what access Holston has to legal materials, and
indirectly stated on September 8, 2006, that he was not granting
any motions. (DE# 28-1 at 79). On December 5, 2006, the court held
a bond hearing at which time it also considered Holston's motion to
disqualify. (DE# 28-4 at 18-22). In its written order dated
December 5, 2006, the court explained the motion to disqualify was
being denied because it was unsworn and certain allegations exceed
the ten-day time limitation set forth in Florida Rules of Judicial
Administration 2.160(c)(3) and (e). (DE# 28-1 at 84).

During the November 27 hearing, Holston requested the
proceedings be transcribed. (DE# 28-4 at 53). He also filed a
written motion for an order to transcribe the hearings. (DE# 28-2
at 91). On May 17, 2007, the court entered an order authorizing
transcription of hearings. (DE# 28-2 at 4). A composite transcript
of the hearings on September 8, 2006, November 22, 2006, December

10

5, 2006, December 6, 2006, and April 27, 2007, was filed on June 11, 2007. (DE# 28-3 at 78). On June 18, 2007, Holston filed a motion to correct transcribed record in which he complained the hearing transcripts were incomplete. (DE# 28-5 at 30). Additional transcripts were filed on July 13, 2007. (DE# 28-5 at 46).

On December 6, 2006, the court again offered Holston a lawyer and Holston rejected the offer. (DE# 28-4 at 56). Holston explained he had filed writ of prohibition regarding the court's denial of the motion to disqualify and also complained about lack of availability of photocopying at the jail. Holston requested a continuance because he did not have the opportunity to depose witnesses. (DE# 28-4 at 59). He explained that being incarcerated had "crippled" his ability to depose witnesses and asked to cross-examine them in open court instead, with the court supervising. (DE# 28-4 at 64). Holston requested a continuance, charged to the State, until the petition for writ of prohibition had been ruled on. The court denied the request so Holston asked for continuance charged to him. The court set a hearing for the motion regarding access to the law library and motion to dismiss.

Holston filed a second motion to disqualify Judge Schack on April 29, 2007. (DE# 28-2 at 94). He argued Judge Schack had "endeavored to demean and disparage movant" by asking, at the April 27, 2007, hearing whether he wanted counsel. He also argued the judge had been unfair at the suppression hearing by providing inadequate notice, a short time to question the witness. He accused the court of "record-fixing," refusal to declare Holston indigent, penalizing Holston for being *pro se*, and failure to timely rule on Holston's motions for law library time. The court denied the motion as legally insufficient on May 10, 2007. (DE# 28-2 at 101).

11

On August 30, 2007, Judge Schack entered an order addressing Holston's motion concerning law library access. (DE# 28-5 at 72). The order notes that Holston agreed the situation had improved since motion was filed. The parties agreed: (A) the jail will be advised D is acting pro se; (B) pro se inmates' research requests will be completed with priority over inmates represented by counsel which is already the jail's policy; and (C) Holston will be advised what research materials are available for inmates. Holston also requested photocopies of his motions be provided to him within one day of any request. The order notes that testimony established the jail already performs this and Holston agreed he received this service. Holston also requested that all research requests be completed within forty-eight hours, which may or may not be reasonable. Reasonableness depends on when requests are made (holidays, etc), and whether material is needed on emergency basis, and security issues at jail.

## **Motion to Suppress**

Holston filed a motion to suppress the photo array, pretrial confrontation and courtroom identification. (DE# 28-2 at 22, 39). The motion to suppress was heard on April 27, 2007, before Judge Schack in Martin County. (DE# 28-4 at 73). Judge Schack again offered Holston counsel at the start of the hearing which he vehemently rejected:

> THE COURT: And Mr. Holston, once again you recognize you have the right to counsel if you wish to be represented by an attorney?
> THE DEFENDANT: For the record, Judge, the Defendant reprobates the Court's offer, Judge.
> THE COURT: I'm sorry?
> THE DEFENDANT: The Defendant reprobates the Court's

12

officer.

THE COURT: Sir, I don't know what you mean by that, because that word doesn't belong in that sentence. Do you wish an attorney or don't wish an attorney?

THE DEFENDANT: Well Judge, reprobates means to reject, Judge, it's a verb, Judge, it means to reject.

THE COURT: Okay.

THE DEFENDANT: That means that I reject the Court's offer, that's all that means, Judge.

THE COURT: Okay.

THE DEFENDANT: May I ask the Court a question?

THE COURT: Yes.

THE DEFENDANT: When the Court says that that does not belong in that sen - sentence, can you please illusinate (sic) what you mean by that, Judge?

THE COURT: Sir, if we could just deal in plain English here, nice 50 cent words?

THE DEFENDANT: I understand what you -- I understand approximately what you say, Judge, but you made the statement as though the word never existed and I was clarifying that it does exist and we can go to the dictionary if need be, Judge. So I don't want any type of misunderstand, Judge. Thank you very much.

THE COURT: Sir - sir, I didn't tell you it didn't exist.

THE DEFENDANT: Yes sir.

THE COURT: I did not tell you it didn't exist.

THE DEFENDANT: Yes sir, Judge.

THE COURT: Okay and sir, just for your information, a dictionary defines reprobate R-E-P-R-O-B-A-T-E as a noun, a person without moral principles; adjective, unprincipled. So --

THE DEFENDANT: That word can also be used as a verb,

13

> Judge. If you check the unabridged dictionary, it's in
> the dictionary.
> THE COURT: The bottom line is, sir --
> THE DEFENDANT: Yes, sir.
> THE COURT: In plain English, you do not wish an attorney
> representing you?
> THE DEFENDANT: I've stated that, Judge.

(DE# 28-5 at 47-49).

Holston explained he was having trouble issuing subpoenas and asked to continue the hearing to procure the attendance of Richard Fauteaux. (DE# 28-5 at 55). The court explained part of problem is that he has cases pending in a number of different jurisdictions. (DE# 28-5 at 53). The State explained the videos were available for Holston's inspection. (DE# 28-5 at 53). Holston agreed the hearing could proceed because the State had a witness present and it would be the State's burden to call Fauteaux, if the array was found to be unnecessarily suggestive and a further inquiry was necessary:

> THE DEFENDANT: Okay. For the record, Judge, the – photo
> is so impermissibly suggestive, Judge, it's clear from –
> even from the photograph, from – from, uh, the duplicate,
> uh, the, uh, photocopy, that's where it actually spring
> from one of the issues. And you can actually look at that
> one. I merely ask that it be produced for the witness
> clarification on the stand, Judge. That's why I
> (indiscernible) a duplicate of it.
> THE COURT: Well, who is it that you need to testify for
> that hearing?
> THE DEFENDANT: Uh, uh, Mr. Fauteaux, because it goes
> directly to his degree – once I make the initial showing,
> the State must show by clear and convincing evidence that

the in-court identification is not tainted gratuitously - gratuitously given by the, uh, out-of-court identification, Judge. So actually really the- he should be called by the State, because once the detective testifies and I establish the im - impermissibly suggestiveness, the burden then shifts to the State and I have case law to support that position, Judge.

THE COURT: Okay. Well, sir then do you need that witness for you to call or not?

THE DEFENDANT: Well, I can call him. If he's here, I - I'm ready to proceed. But -

THE COURT: That - that's not my question, sir.

THE DEFENDANT: Sir.

THE COURT: If you're telling me that you believe it's the State's burden and that they're going to need to call that witness, is there anything then that prevents going forward today if the witness is not here?

THE DEFENDANT: No sir, Judge.

(DE# 28-5 at 56-57).

Detective Farnham testified as follows:

Q. And the Wal-Mart at that time was open 24 hours open for business?

A. Yes.

Q. Now you have a photo lineup prepared in this case, correct?

A. Correct.

Q. And who actually prepared the photo lineup?

A. Our evidence custodian.

THE COURT: Sorry?

THE WITNESS: Our evidence, uh, custodian, Katie Williams.

15

BY MS. KIRKWOOD:

Q. And before you used the -- the lineup, you had made--

THE DEFENDANT: Objection, Judge, if she never prepared the photo array, then she should not be testifying because she never prepared the photo array.

THE COURT: What's the legal basis for your objection, sir?

THE DEFENDANT: The fact that she's not the one prepared the photo array, so she can't testify to it in terms of why she did it.

THE COURT: Overruled.

(DE# 28-4 at 88)

When Holston finished examining Detective Farnham, the following transpired:

THE DEFENDANT: You go ahead Deputy – okay. I have nothing further. I'm ready for summation.

THE COURT: Thank you.

MS. KIRKWOOD: No additional questions for this witness, Judge. I'd ask that she be released for today.

THE COURT: Any objection, sir?

THE DEFENDANT: No, no objection.

(DE# 28-4 at 91).

Holston argued the Stuart Police Department's procedures were unnecessarily suggestive. (DE# 28-4 at 92). The court examined the six-person photo array and found it was a fair array that was not unnecessarily suggestive. (DE# 28-4 at 99). After the court had already announced its ruling denying the motion to suppress, Holston stated he had filed a motion to bring the actual surveillance video so he could see the witnesses' degree of

16

attention. The court explained it went forward with motion to suppress as asked by parties and Holston did not say there was an issue as to video so has been waived. (DE# 28-4 at 102); <u>see</u> (DE# 28-2 at 103) (written order).

## <u>Trial</u>

A consolidated trial of the Martin, Collier, and St. Lucie County cases proceeded before Judge Schack in Martin County on November 26, 2007. Prior to the start of trial, Judge Schack conducted a new <u>Faretta</u> inquiry. (DE# 29-1 at 54). The court explained the benefits of counsel and cautioning him that the rules of court apply. (DE# 29-1 at 60-64). The following transpired:

> THE COURT: Sir, do you wish to waive your right to counsel?
> THE DEFENDANT: Yes, sir, Judge, I do wish to waive my right to counsel.
> THE COURT: I will find that you are literate, competent and with full understanding you are freely and voluntarily waiving your right to counsel in this case.

(DE# 29-1 at 64).

The State explained in its opening statement that Holston had been engaged in an ongoing scheme to defraud Wal-Mart over a three-month period: twice in Naples (over $14,000), four times in Port St. Lucie (over $20,000); and four times in Stuart (over $50,000). (DE# 29-3 at 38). The State stated witness Ronald Fauteaux, and Wal-Mart greeter, Roland Bistien, identified Holston from photo arrays following the March 6, 2006, Stuart incident and the March 14, 2007, Naples incident, respectively. The State explained Holston was finally caught after an employee interrupted an attempted offense on April 3, 2006, in Port St. Lucie after which

17

security cameras captured an image of Holston's license plate leaving the Wal-Mart parking lot. In addition, the State explained Holston was convicted in a similar offense involving a Melbourne Wal-Mart in October 2005.

Holston presented an open statement raising a mis-identification offense based on an unduly suggestive photo array. He also suggested Wal-Mart paid for the investigation and his prosecution resulted from collusion between the police and Wal-Mart. (DE# 29-3 at 44).

The State introduced surveillance videotape evidence and some video stills through Wal-Mart security personnel for each of the affected stores. (DE# 29-3 at 56) (Port St. Lucie Wal-Mart investigator Roy Papsidero testifying regarding the offenses on December 20, 2005, January 24, 2006, and April 3, 2006); (DE# 29-4 at 43) (Stuart Wal-mart loss prevention employee Jason Gregory testifying regarding the January 27, 2006, offense where the suspect left with three loads of goods on the same day) (DE# 29-5 at 24)(Gregory testifying about the March 6 and 7, 2006 Stuart incidents); (DE# 29-5 at 28)(Gregory testifying he identified witness Richard Fauteaux from markings on his work van from the March 27, 2006, Stuart incident); (DE# 29-5 at 51) (Gregory testifying regarding the March 29, 2006, Stuart incident); (DE# 29-5 at 64) (Stuart loss prevention detective Jay Kappert testifying regarding the February 3, 2006, video that was not recorded before it expired and was erased from the system); (DE# 29-6 at 11) (Ft. Pierce Wal-Mart asset protection employee Joshua Lee testifying regarding the suspect's repeated entries and exists with goods on March 25, and March 27, 2006); (DE# 29-6 at 46) (Ft. Pierce Wal-Mart Asset protection coordinator Leona Fair testifying about the incident on March 26-27); (DE# 29-6 at 74) (Naples Wal-Mart

employee Bruce Fields testifying regarding the March 14-15, 2006 incident where the suspect pushed past Naples greeter Roland Bistien).

Each tape reveals a black male subject entering the Wal-Mart store where he is met by one or two accomplices, usually during the late night or early morning hours. The subject takes items from the Wal-Mart electronics department, often from locked cases, and leaves the store without permission and without paying for the items. See (DE# 29-3 at 74); (DE# 29-4 at 47); (DE# 29-6 at 32).

Port St. Lucie Wal-Mart investigator Roy Papsidero testified he got the suspect's license tag number from the April 3, 2006, incident and contacted police. The tag number was registered to Holston. (DE# 29-3 at 83).

The State called Wal-Mart employees to testify regarding the items taken during each incident.

**Port St. Lucie** Wal-Mart Electronics Manager Sonja Torres testified the store had been fully stocked on December 20, 2005 and was restocked following the offense. Based on the store's inventory records and viewing the videotapes of the offense, she was able to conclude the following was taken: at least 192 video games with a minimum value of $39, twelve consoles for $300 retail and nine Ipods for $300 retail, and five MP3 players for $129. (DE# 29-4 at 14-17). On January 24, 2006, the following was taken: at least sixty-eight Playstation 2 games at $30 each, and two consoles at $300 each. (DE# 29-4 at 17).

Former **Stuart** Wal-mart as assistant manager Chris Harris testified that, during the January 27, 2006, offense, laptops,

Playstations, and game boys with a market value of $7688 were taken. (DE# 29-4 at 72). Stuart Wal-mart Electronics Manager Harpal Sandhu arrived at loss numbers based inventories that happened after each reported theft using Wal-mart's ongoing inventory. (DE# 29-5 at 12). During the February 3, 2006, the following was taken: twenty PS2 game systems valued at $149 each , twenty-one Nintendo DS video games valued at $129.44 each; 248 Sony Playstation 2 games valued at $129.44 each (total $9,004.68), thirty-two Sony PSP video games valued at $1,567.44, fifty-nine Nintendo Game Boy Advance valued at $79.42 each. (DE# 29-5 at 9-11). During the March 6, 2006 incident, thirty-three Playstation games were taken, valued at a total of $660.04(DE# 29-5 at 11). During the March 29, 2006 incident, 164 Playstation games were taken, valued at a total of $6,796.69. (DE# 29-5 at 12).

**Ft. Pierce** Wal-Mart Asset protection coordinator Leona Fair testified the following was taken during the incident on March 26-27: at least 300 DVDs with a minimum price of $9 or $10, and Vizio brand TVs at least thirty-two inches in size with a value of at least $1,000. (DE# 29-6 at 51-66).

**Naples** Wal-Mart Overnight Manager Linda Tempson testified the game cabinets were fully stocked and locked on March 14, 2006. (DE# 29-6 at 79-80). The offense was discovered as the suspects left the store's door. She discovered six cases were broken. She collected the remaining items and locked them in an office. Morning Manager Lane Nelson performed an inventory of the remaining games and created a report of what was missing: PSP2 games worth $14,618. (DE# 29-6 at 84).

During the March 7 incident, the surveillance video reveals the same subject from the January incident pushing a shopping cart

20

full of bagged electronic video game systems and games through the door. (DE# 29-5 at 28). A female accomplice approached greeter with bag in her hand to distract the greeter because the male subject had set off the door alarm. (DE# 29-5 at 29). A male bystander who saw the incident was identified from his work van's markings as Richard Fauteaux. (DE# 29-5 at 29-32).

Fauleux testified that he went to the Stuart Wal-Mart in his work truck on March 7, 2006, to buy a video game that was coming out at midnight. (DE# 29-5 at 38-39). While he was waiting for an employee to bring him a game, he saw a black male taking things off the shelf and putting them into a cart and tidying up as though he worked there.(DE# 29-5 at 39). Fauleux approached him and asked about the video game. He said they did not have the game and brought Fauleux over to the computer section of video games three aisles away recommended a game. (DE# 29-5 at 40). Fauleux continued waiting in the general area and noticed the man would leave when Fauleux approached. (DE# 29-5 at 41). Fauleux bought a game and went into the store's McDonalds as he was leaving. He saw the subject going out the door with a shopping cart full of bags of electronics. He approached the greeter to ask if the man worked there and the geeter said no. (DE# 29-5 at 42). He was contacted later by police and met with Detective Farnham on April 14, 2006, when she showed him a photo lineup. (DE# 29-5 at 43). Fauleux identified Holston from the photo array and in court. (DE# 29-5 at 43). Holston cross-examined Fauleux about the time between incident and photo identification, his opportunity to view subject, the fact that Holston was wearing jewelry in the photo, and Fauleux's criminal history. (DE# 29-5 at 48).

Detective Farnham testified she showed Fauleux a photo array, and that he identified Holston immediately. The following

21

transpired on cross examination:

BY THE DEFENDANT:

Q. Now Detective Farnham, when you prepared the photo array, obviously you just testified that your suspect had been arrested, correct, in Brevard County?

A. Correct.

Q. And there were mug shots taken, correct?

A. Correct.

Q. And instead of using a mug shot, Detective Farnham, you used a photo from the DMV, correct?

A. Correct.

Q. And that photo clearly depicted your suspect wearing jewelry, correct?

A. Correct.

Q. And how much experience do you have preparing these photo arrays, Detective Farnham?

A. I have prepared lineups for the entire twelve years I've been an officer.

...

Q. And the photo you chose instead of using a mug shot, you chose a photo with your suspect actually wearing jewelry is that – is that your testimony today?

A. Yes.

...

Q. And did you do it because you sought to have Reginald Holston arrested?

A. I prepared a photo lineup using a driver's license photograph because it was the most usable photograph to obtain similar and like subjects. The mug shot was not available at that time and we don't commonly use mug shots in a photo lineup anyway.

22

(DE# 29-6 at 3-5).

Port St. Lucie Wal-Mart overnight stocker Jennifer Boren testified she was working on April 3, 2006. She saw someone she suspected of stealing around midnight. (DE# 29-4 at 34). He put at least three PSPs into buggy, valued at $299 each. (DE# 29-4 at 35). She came over and started conversation with him because the items are supposed to be locked up. (DE# 29-4 at 36). He asked question and they walked toward the video games. He said he needed to ask his girlfriend a question about games and left. (DE# 29-4 at 36). Boren returned the items to the shelf. The State played the videotape of Boren and the suspect engaged in conversation. (DE# 29-4 at 38). She identified Holston in court. (DE# 29-4 at 38). On cross-examination, Holston questioned her about the length of time since the offense and why she did not report incident to police. (DE# 29-4 at 38). On re-direct, Boren explained she recognized his voice and facial features and was sure it was him. (DE# 29-4 at 42).

Assistant Manager of the Ft. Pierce Wal-Mart, Kenneth Eden, testified he had a conversation with a black male subject around 11:30 PM on March 25, 2006. (DE# 29-6 at 24). The man approached Eden and asked about working for Wal-Mart and getting a scholarship. (DE# 29-6 at 25-26). The man had a shopping cart with some silver plastic "tote" containers inside. The two men spoke for three or four minutes. (DE# 29-6 at 26). When the theft was reported, Eden saw the video, and realized the suspect was the person with whom he had conversed. He identified Holston in court. (DE# 29-6 at 27). Holston cross-examined him about his ability to make the identification and the amount of time that had elapsed between the offense and trial. (DE# 29-6 at 28).

During trial, the prosecutor came forward with information that it had just learned Roland Bistien had not actually identified Holston from a photo array. The following transpired:

MS. KIRKWOOD: ... Now before we begin, I have some information that I have a duty to disclose that I learned this morning. Mr. Bistien is here from Naples with a Creole interpreter. He was the greeter who picked the Defendant out of a photo lineup. In pretrial consultation we were going through the photo lineup and he indicated to me that the person that he picked out was someone that he recognized, not necessarily the same person who stole the items. That there was a miss, uh, (indiscernible) the detective and the detective understood it, you know, he asked the question who was it that took it? It's him. There was a miscommunication so there isn't actually a positive identification for the photo lineup. They are both here and I intend to bring that out in front of the jury, but obviously I intend to proceed based on the similarities from the video.

THE COURT: Okay, so you're going to bring out to the jury on your own --

MS. KIRKWOOD: Yeah.

THE COURT: -- the fact that this occurred?

MS. KIRKWOOD: Yes, Judge, in light of opening statement, I don't think I can do otherwise.

THE COURT: Okay, thank you. Mr. Holston, anything we need to address on it?

THE DEFENDANT: Well just, Judge, that from my understanding Judge from this guy allegedly picking me out of this photo lineup which is why the charges were actually brought, Judge. I think at this eleventh hour,

24

I should be able to -- I do wish to cross-examine him on
the individual that he allegedly picked out of that photo
lineup, Judge.

THE COURT: Well, sir, you'll be able to have latitude in
cross-examination. It sounds as though the State is going
to bring part of it out for you.

THE DEFENDANT: Yes, sir, Judge.

THE COURT: Okay?

THE DEFENDANT: Yes, sir, Judge.

(DE# 29-6 at 40-42).


The State called Detective Steve Spell, who presented the
photo array, and Roland Bistien, who viewed the array, at trial to
explain the miscommunication. (DE# 29-7 at 15, 36). Bistien
testified he identified the person in the array who looked familiar
as a customer from the store. He did not mean that person was the
offender. He could not identify Holston at trial, saying he did not
see the suspect's face. (DE# 29-7 at 37).


The prosecutor asked the court to read the <u>Williams</u> Rule
instruction. (DE# 29-7 at 70). Holston agreed because he pled
guilty to the other case. (DE# 29-7 at 74). The court read the
instruction. (DE# 29-7 at 74). Melbourne Detective Carlos Navedo
testified he apprehended Holston and two accomplices in the process
of bagging up a cart full of electronics goods inside a Melbourne
Wal-Mart store. (DE# 29-7 at 77-78). He identified Holston in
court. (DE# 29-7 at 78). A Wal-Mart employee testified Holston and
his accomplices were apprehended while in the process of loading up
and bagging $3,903.70 worth of high ticket electronics goods.(DE#
29-7 at 84). A certified prior of Holston's resulting grand theft
conviction was admitted without objection. (DE# 29-7 at 90).

Holston declined to present evidence or testimony. (DE# 29-8 at 7-8).

During the charge conference, the prosecutor asked to reduce the Port St. Lucie case **06-2457**, to third-degree grand theft because the evidence regarding value did not reach $20,000. (DE# 29-8 at 14). As to the Stuart case **06-698**, the prosecutor asked to send organized fraud (Count 5) to the jury but not the four theft counts (Counts 1-4) to prevent any double jeopardy issues. (DE# 29-8 at 15). Holston agreed. (DE# 29-8 at 18).

As there is no standard instruction for organized fraud, the court crafted an instruction. (DE# 29-8 at 37). Holston argued the instruction should be more akin to theft because no willful misrepresentation of fraud was involved. (DE# 29-8 at 37-38). The following transpired:

> THE COURT: I'm inclined to give this, Mr. Holston. You were telling me about paragraph two, but I think paragraph 2 is an accurate statement of the law. Is there something that you know otherwise --
>
> THE DEFENDANT: No sir.

(DE# 29-8 at 39).

In closing, Holston argued the prosecution conspired with Wal-Mart to frame him because of the Melbourne incident. He argued video images can be modified and that he resembles other people. He also argued Farnham improperly used a DMV photo for the photo array, in which Holston was wearing jewelry, rather than mug shot. (DE# 29-9 at 12). He also argued Boren and Eden were not credible because they never came forward until trial, and that this further demonstrated collusion. (DE# 29-9 at 43-44).

The court instructed the jury as follows with regards to the count of organized fraud:

> To prove the crime, the State must prove the following four elements beyond a reasonable doubt.
> 1. Mr. Holston knowingly and unlawfully engaged in a systematic on-going course of conduct.
> 2. He did so with an intent to defraud one or more persons or entities or with the intent to obtain property from one or more persons or entities by false or fraudulent practices.
> 3. The act did temporarily or permanently deprive any person of the right to the use of the property.
>     I'm sorry, let me start that again.
> 3. The act did temporarily or permanently deprive any person of the right to the property or a benefit there from or appropriated the property to one's own use or to the use of another person not entitled thereto.
> 4. The value of the property taken was $20,000.00 or more.

(DE# 29-9 at 56-57).

The court instructed the jury as follows with regards to the grand thefts in St. Lucie County cases 06-2457 and 06-3766:

> Turning to St. Lucie County case number 2006-CF-2457. To prove the crime of Theft, the State must prove the following two elements beyond a reasonable doubt.
> 1. Mr. Holston knowingly and unlawfully obtained or used or endeavored to obtain or endeavored to use the electronics or merchandise of Wal-Mart or Roy Papsidero.
> 2. He did so with intent to either temporarily or permanently deprive Wal-Mart or Roy Papsidero of his or

27

its right to the property or any benefit from it, or to appropriate the property of Wal-Mart or Roy Papsidero to his own use or to the use of any person not entitled to it.

If you find the Defendant guilty of Theft, you must determine by your verdict whether the value of the property taken was $300.00 or more, but less than $20,000.00, grand theft, or the value of the property taken was less than $100.00, second degree petit theft.

St. Lucie County case number 2006-CF-3766, to prove the crime of Third Degree Grand Theft, the State must prove the following three elements beyond a reasonable doubt.

1. Mr. Holston knowingly and unlawfully obtained or used or endeavored to obtain or endeavored to use the merchandise of Wal-Mart or Leona Fair.

2. He did so with intent to either temporarily to temporarily or permanently deprive Wal-Mart or Leona Fair of her or its right to the property or any benefit from it, or to appropriate the property of Wal-Mart or Leona Fair to his own use or to the use of any person not entitled to it.

3. The value of the property taken was $300.00 or more.

...

Now the following instructions apply to all the Theft counts.

...

Amounts of value of separate properties, involved in thefts committed pursuant to one scheme or course of conduct, whether the thefts are from the same person or several persons, may be totaled in determining the grade of the offense.

(DE# 29-9 at 58-61).

The jury found Holston guilty of each count. (DE# 29-9 at 83); (DE# 28-6 at 48) (Stuart: guilty of organized fraud, $20,000 or more, as charged; Naples: guilty of third degree grand theft, as charged; Ft. Pierce: guilty of third degree grand theft, as charged; Port St. Lucie: guilty of third degree grand theft, as charged).

After the verdict was rendered, Holston argued he should be grated judgment of acquittal for the grand theft convictions in the Port St. Lucie and Ft. Pierce cases because the State did not prove value and pled the wrong statute. (DE# 29-9 at 86). The court instructed him to file whatever he needs to in writing. (DE# 29-9 at 87). In a written post-trial motion for judgment of acquittal, Holston argued the evidence was insufficient to sustain the conviction for second-degree organized fraud because value not proved beyond reasonable doubt. (DE# 28-6 at 54). The court denied his motion following a hearing. (DE# 29-9 at 91).

The court adjudicated Holston guilty and sentenced him to ten years imprisonment for the organized fraud (case 06-698), and five years imprisonment for the thefts (cases 06-2457, 06-3766, and 06-2877).(DE# 28-9 at 45); (DE# 28-6 at 71-73); (DE# 28-8 at 2-4); (DE# 28-8 at 87-89); (DE# 28-9 at 32, 43).

Holston moved to have the cases transferred back to Martin County for appeal and proceeded *pro se*. <u>See</u> (DE# 28-8 at 11) (motion to transfer); (DE# 28-6 at 92) (order transferring St. Lucie cases for appeal). He raised the following issues:

(1) trial court erred in denying motion for judgment of

acquittal when he argued Florida Statutes Section 817.084(4)(a) was legally inapplicable to the facts of his case or acts of mere "retail theft."

(2) Holston was denied due process when the trial court denied his motion for judgment of acquittal where the State failed to prove any manner of "fraud," or a "scheme to defraud" and therefore failed to prove "organized fraud."

(3) the trial court erred by denying Holston's motion to suppress because the Martin County photo array impermissibly suggested the suspect to witness Richard Fauleux.

(4) Structural error occurred when the Collier County court permitted Holston to waive and transfer venue from Collier County to Martin County without first securing express, valid, intelligent, competent and voluntary waiver of counsel.

(5) the St. Lucie County court erred by transferring venue to Martin County without first conducting any hearing to renew the offer of counsel or conduct an adequate Faretta hearing.

(6) the St. Lucie informations were fundamentally and fatally defective in violation of due process.

(7) the court committed fundamental error by failing to instruct the jury on a disputed element of the crime, in violation of due process and depriving Holston of a unanimous verdict.

(8) the trial court erred in denying Holston's motion for judgment of acquittal because the State failed to prove third-degree grand theft (Port St. Lucie).

(9) the trial court erred in denying Holston's motion for judgment of acquittal where the state failed to prove

third-degree grand theft (Ft. Pierce); and

(10) the trial court erred in denying Holston's motion for judgment of acquittal where the state failed to prove third-degree grand theft (Naples)

(DE# 29-12 at 1).

The Fourth District Court of Appeal *per curiam* affirmed. <u>Holston v. State</u>, 23 So. 3d 728 (Fla. 4th DCA 2009)(4D08-336). The mandate issued January 29, 2010. (DE# 29-11 at 2).

Holston filed the instant petition on March 8, 2010.[4]

### III. Statute of Limitations

The Respondent concedes the instant petition is timely.

### IV. Exhaustion

The Respondent argues portions of Holston's claims are unexhausted. Holston challenges this contention. The Court declines to engage in an exhaustion analysis and addresses the claims on the merits in the interest of judicial economy. <u>See</u> <u>Lambrix v. Singletary</u>, 520 U.S. 518 (1997) (although procedural issues should generally be addressed before considering the merits of a claim, the courts may reach the merits first in the interest of judicial economy); <u>Peoples v. Campbell</u>, 377 F.3d 1208 (11th Cir. 2004) (a habeas petition can be denied on the merits notwithstanding the applicant's failure to exhaust state-court remedies); <u>see also</u> <u>Barrett v. Acevedo</u>, 169 F.3d 1155, 1162 (8th Cir. 1999)(judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner and the procedural bar

---

[4] The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. <u>Adams v. United States</u>, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

issues are complicated).

## V. Standard of Review

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); see Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Fugate v. Head, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Hall v. Head, 310 F.3d 683, 690 (11th Cir. 2002) (citing Williams, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. See Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y, Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003).

32

So long as neither the reasoning nor the result of the state
court decision contradicts Supreme Court decisions, the state
court's decision will not be disturbed. Id. Further, a federal
court must presume the correctness of the state court's factual
findings unless the petitioner overcomes them by clear and
convincing evidence. See 28 U.S.C. § 2254(e)(1); Putman v. Head,
268 F.3d 1223, 1241 (11th Cir. 2001).

VI. Discussion

(1) <u>Motion to Suppress</u>

Holston argues the photo array from which witnesses Fauleux
and Bastien identified him was unduly suggestive because the arrays
used driver's license photo, depicting Holston wearing jewelry,
rather than mug shots. He argues both eyewitesses' identifications
were impeached and tainted by suggestive photo array, and Bastien
was essentially tricked into making an identification. He contends
Detective Farnham committed perjury, noting she testified at the
suppression hearing that she did not compile the photo array, then
testified at trial that she did compile the array, in violation of
the Fourteenth Amendment. Finally, he argues Judge Schack was not
dispassionate at the April 27, 2007, suppression hearing, aligned
himself with the prosecutor, deprived Holston of fair notice of
hearing and access to discovery material (surveillance tapes),
bullied Holston into proceeding without witness, interrupted
Holston's examination of Detective Farnham, and deliberately
concealed a portion of hearing that flouted Holston's rights. He
asserts the court's denial of motion to suppress objectively
unreasonable and the error was not harmless because Williams Rule
evidence was used to prove identity.

A pretrial identification and subsequent in-court
identification may violate due process if the pretrial procedure

was "unnecessarily suggestive and conducive to irreparable mistaken identification." <u>Stovall v. Denno</u>, 388 U.S. 293, 302 (1967); <u>see Manson v. Brathwaite</u>, 432 U.S. 98 (1977); <u>Neil v. Biggers</u>, 409 U.S. 188 (1972). The crucial test of suggestiveness for is whether the lineup suggests which individual the witness should identify, thereby creating a likelihood of misidentification. The fundamental test of fairness for photo arrays is met where a lineup containing six pictures is shown. <u>United States v. Smith</u>, 546 F.2d 1275 (11th Cir. 1977). A photographic lineup is unduly suggestive when the defendant's photo significantly stands out from the rest of the photos in the array. <u>O'Brien v. Wainwright</u>, 738 F.2d 1139, 1141 (11th Cir. 1988).

If the original identification procedure was unduly suggestive, the court must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable. <u>Cikora v. Dugger</u>, 840 F.2d 893, 895 (11th Cir. 1988). The Supreme Court has listed five factors which are important in evaluating the reliability of an identification obtained by a suggestive procedure, and which are weighed against the corrupting effect of the suggestive identification. <u>Id.</u> They are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." <u>Biggers</u>, 409 U.S. at 199-200.

Holston's argument the photo array identification should have been suppressed lacks merit. The trial court examined the six-person photo array from which Fauleux initially identified Holston and found it was not unnecessarily suggestive. This conclusion is

supported by the record and is not contrary to or an unreasonably application of clearly established federal law. See O'Brien, 738 F.2d at 1141; Smith, 546 at 1275. Accordingly, evidence regarding Fauleux's photo array identification was admissible and did not taint Fauleux's in-court identification of Holston. See Cikora, 840 at 895-96 ("If we conclude that the photo array is not impermissibly suggestive, we need not proceed to the five factors of the Neil v. Biggers test."). Holston's argument that both eyewitnesses' identifications[5] were impeached goes to the weight, not the admissibility of the photo array evidence and does not provide a basis for habeas relief.

Holston contends Detective Farnham committed perjury by testifying at the suppression hearing that she did not compile the photo array, then testifying at trial that she did compile the array, which violated the Fourteenth Amendment. At the suppression hearing, Farnham testified she used a photo lineup that was prepared by evidence custodian Katie Williams. (DE# 28-4 at 88). At trial, she testified regarding the photo array's composition, her experience compiling photo arrays, and the availability of mugs shots. (DE# 29-6 at 1). At one point, Farnham testified she "prepared a photo lineup  using a driver's license photograph because it was the most usable photograph to obtain similar and like subjects. The mug shot was not available at that time and we don't commonly use mug shots in a photo lineup anyway." (DE# 29-6 at 5). Holston never directly asked her whether Farnham had

---

[5] The State discovered during trial that Bastien had not actually identified Holston from a photo array. The State had mentioned Bastien's photo array identification in its opening statement and corrected the error by calling Bastien at trial to explain through an interpreter that he only identified Holston as someone he recognized from the Wal-Mart store, and did not mean to identify him as the robber. Nor did Bastien identify him as the robber at trial. Accordingly, Holston could not have been prejudiced even if the photo array Bastien was shown had been unduly suggestive.

prepared the array herself, and did not impeach her with the evidentiary hearing testimony that Williams actually compiled the photo array. In doing so, he would have given Farnham the opportunity to correct herself or could have impeached her credibility with the inconsistent suppression hearing testimony. Holston has waived any allegation of perjury by failing to cross-examine her on the issue at trial. He has also waived the opportunity argue counsel was ineffective for failing to impeach Farnham on the issue because he represented himself at trial.

Holston's contention that Judge Schack was not dispassionate at the April 27, 2007, suppression hearing is refuted by the record. The record indicates the court conducted itself fairly and impartially at all times. Holston's allegation that he was deprived of fair notice of the hearing and access to discovery material (surveillance tapes) is refuted by the record. The court repeatedly warned Holston that he was proceeding *pro se* at his own peril, that an attorney would have better access to pleadings and discovery, and made arrangements that attempted to ensure Holston would receive timely notice of hearings and access to discovery and pleadings. The suppression hearing transcript indicates Holston was ready to proceed with the hearing and called Detective Farnham, whose presence the State had procured, as a witness. At the hearing, he complained that, once he demonstrated the array was suggestive, the State would need to call Richard Fauteaux. However, he conceded nothing prevented going forward with the suggestiveness inquiry. Indeed, the court found the array was not suggestive so no further inquiry was required. There is no indication the court bullied him into proceeding while unprepared. Holston's complaint that the court interrupted Holston's examination of Detective Farnham is also refuted by the record. The court intervened when Holston's examination drifted too far afield or became

argumentative. The court's management of the proceedings before it were reasonable and did not deprive Holston of due process. Holston's suggestion he was not permitted to finish examining Detective Farnham is refuted by the record, where he stated he had "nothing further" for the detective and did not object to the court releasing her for the day. (DE# 28-4 at 91). Holston's suggestion he was forced to proceed with the suppression hearing without the surveillance video tape likewise lacks merit. Holston did not raise the issue of the video tape until after the court had ruled on the suppression motion. The court correctly found Holston had waived the issue under the circumstances. (DE# 28-4 at 102). The court's reasonable management of its docket and fair application of Florida's procedural rules do not indicate the court was biased.

Finally, Holston contends the court deliberately concealed a portion of the hearing that flouted Holston's rights. The record indicates Holston requested that several pretrial hearings be transcribed in support of a pretrial petition for writ of prohibition. A transcript including the substantive portions of each hearing, combined into a single transcript, appears in the record. Holston complained the transcripts were incomplete and the court issued an order for the complete hearings to be transcribed. The complete transcripts appear in the record. Holston fails to explain how the trial court was responsible for the preparation of abbreviated transcripts or how the slight delay in filing the complete transcripts prejudiced him.

(2)   Sufficiency of the Evidence (organized fraud)

Holston complains the State failed to prove a "scheme to defraud" in violation of the Fourteenth Amendment, that the court provided jury instruction on scheme to defraud even though the elements were not proved, and erroneously denied his motion for

judgment of acquittal. He argues he should be discharged because there was insufficient evidence to prove a scheme to defraud and no instructions on lesser offenses were given, leaving the jury with the option of an "all or nothing" verdict.

The trial court's denial of a motion for judgment of acquittal ordinarily presents a state law claim, not a claim of constitutional dimension. See Buckner v. State, 714 So. 2d 384 (Fla. 1998) (under Florida law, motion for judgment of acquittal should be denied if the jury could infer guilt from competent evidence viewed in the light most favorable to the state). It would only be a claim of constitutional dimension to the extent that Petitioner claims there was insufficient evidence to support his conviction and there was a violation of due process of law as a result of this deficiency. The test in federal habeas cases for a claim of insufficient evidence is whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to justify any rational fact finder in finding the petitioner guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 316-19 (1979); Fallada v. Dugger, 819 F.2d 1564, 1570 (11th Cir. 1987); Martin v. Alabama, 730 F.2d 721, 724 (11th Cir. 1984).

The crime of "organized fraud" occurs when "[a]ny person who engages in a scheme to defraud and obtains property thereby...." § 817.034(4)(a), Fla. Stat. A "scheme to defraud" is a "systematic, ongoing course of conduct with intent to defraud one or more persons, or with intent to obtain property from one or more persons by false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act." § 817.034(3)(d), Fla. Stat. Organized fraud is a second-degree felony "[i]f the amount of property obtained has an aggregate value of $20,000 of more, but less than $50,000...." § 817.034(4)(a)2., Fla. Stat.

Florida courts have found organized fraud contains the following elements:

> (1) Engaging in or furthering a systematic, ongoing course of conduct (2) with (a) intent to defraud, or (b) intent to obtain property by false or fraudulent pretenses, representations, or promises, or willful misrepresentations of a future act, (3) resulting in temporarily or permanently depriving any person of the right to property or a benefit therefrom, or appropriating the property to one's own use or to the use of another person not entitled thereto.

Pizzo v. State, 945 So. 2d 1203, 1207 (Fla. 2006); Louberti v. State, 895 So. 2d 479, 480-81 (Fla. 4th DCA 2005); Donovan v. State, 572 So. 2d 522, 526 (Fla. 5th DCA 1990).

The evidence, viewed in the light most favorable to the State, reveals sufficient evidence for a reasonable fact finder to find Holston guilty of organized fraud. Holston and one or two accomplices entered four separate Wal-Mart stores on eleven occasions. While the accomplices acted as lookouts and diverted Wal-Mart employees, Holston would load up shopping carts with high-priced electronic items which were usually taken from locked cases. He would then conceal the items inside plastic "tote" bins or would bag the items in Wal-Mart bags so they would appear to have been purchased goods. He would then leave the store without paying through an unguarded entrance or by distracting the employees with the accomplices' help. This evidence is sufficient for a reasonable jury to conclude Holston engaged in a systematic and ongoing course of conduct of obtaining property through fraud or false pretenses from Wal-Mart stores. See, e.g., Beamon v. State, 23 So. 3d 209 (Fla. 4th DCA 2009) (using a stolen debit card over the course of

a month in twenty-eight separate transactions was an "ongoing course of conduct;" each use of the card was necessarily accompanied by an implied representation that the defendant was lawfully entitled to use the card  to obtain money or goods for herself). Accordingly, the trial court did not err by presenting the organized fraud count to the jury for resolution or by instructing the jury on that count. Because the evidence was sufficient to support Holston's conviction, the court's denial of Holston's motion for judgment of acquittal did not violate due process.

To the extent Holston attempts to complain the jury instruction the court provided was incorrect, he waived this claim by admitting at trial the instruction correctly stated the law. See (DE# 29-8 at 39). The Florida Standard Jury Instructions do not contain an instruction for a violation of section 817.034. The instruction the court crafted relied on the statutory language and relevant case law interpreting the statute. See (DE# 29-9 at 57-58). No error is apparent.

(3)-(5)   <u>Sufficiency of the Evidence (grand theft)</u>

Holston argues the State failed to prove third-degree grand theft in the Port St. Lucie, Ft. Pierce, and Naples cases in violation of the Fourteenth Amendment.

<u>Port St. Lucie</u>: Holston argues the witnesses who testified regarding the value of the stolen property, Torres and Jennifer Boren, were incompetent to testify as to value and admitted it was possible employee thefts would be included in her determination of what was taken. He complains Boren was a surprise witness and that the State intentionally amended the information to include April 3, 2006, to aggregate the four thefts in case 06-2457 and

intentionally ambush Holston with Boren's testimony. He complains that Boren was not named in voir dire or in any discovery, and that he did not know prior to case being transferred to Martin County that there were any witnesses in the Port St. Lucie cases. He contends his conviction should be reduced to a second-degree misdemeanor.

The evidence taken in the light most favorable to the State was sufficient for a reasonable jury to conclude Holston was guilty of the Port St. Lucie offense. See Claim (2), supra (setting forth the standard for sufficiency of the evidence habeas review). Port St. Lucie Wal-Mart Electronics Manager Sonja Torres testified the store had been fully stocked on December 20, 2005 and was restocked following the offense. Based on the store's inventory records and viewing the videotapes of the offense, she was able to conclude the following was taken: at least 192 video games with a minimum value of $39, twelve consoles for $300 retail and nine Ipods for $300 retail, and five MP3 players for $129. (DE# 29-4 at 14-17). This testimony was supported by videotapes and still images of the offenses that were shown to the jury. (DE# 29-3 at 56). Taken in the light most favorable to the State, this evidence was sufficient for a reasonable jury to conclude Holston was guilty of taking more than $300 worth of goods from the Port St. Lucie Wal-Mart.

To the extent Holston contends a Brady violation occurred, he waived this argument by failing to present it at trial. He did not object to the "surprise" witness' testimony or proffer how Boren's allegedly late disclosure prejudiced his ability to prepare for trial. Instead, he argued in closing that the witness had just come forward and argued this was proof of collusion between Wal-Mart and the police. A simple claim of trial court error regarding admissibility of the witness' testimony is not cognizable on habeas

review. See Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir. 1995)(evidentiary ruling claims reviewed only to determine whether the error "was of such magnitude as to deny fundamental fairness"). He has failed to demonstrate the alleged Brady violation fundamentally affected the trial. Indeed, Torres' testimony alone was sufficient to support his conviction for the Port St. Lucke offense. In addition, a veritable mountain of evidence proved his guilt, including multiple videotapes, still images, and information linking Holston's license plate to one of the offenses, was more than sufficient to support his conviction. Further, he cannot raise this claim in terms of ineffective assistance of trial counsel because he represented himself and waived such a claim.

To the extent Holston complains the State improperly amended the information, this claim also fails. Holston waived any challenge to the amendment by agreeing to the amendment at the close of the evidence. See Claim (8), infra. Further, this claim is not cognizable on federal habeas review. The Florida procedural rules permit offenses to be consolidated, and informations to be amended to conform to the evidence. See Claim (8), infra. Holston's attempt to attack the Florida court's implementation of its own procedural rules raises an issue of State law that is not cognizable on federal habeas review. See Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988)(quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)). Further, he waived this claim in terms of ineffective assistance of counsel because he represented himself at trial.

Ft. Pierce: Holston argues Leona Fair and Joshua Lee were unqualified to testify as to the items taken because they had no personal knowledge, could not provide exact values or quantities, and their testimony was based on approximations, estimations, and

fabrications. He complains the State called Eden as surprise witness to link Holston to Ft. Pierce thefts, had conversation with Holston while carrying totes, and identified him in court. Although Holston admits Eden is listed in discovery, he complains that nothing indicates Holston made any statements to him. He further complains Eden failed to report the conversation to FDLE and that there is no footage of the conversation. He complains the prosecutor engaged in misconduct and that he should be discharged.

The evidence taken in the light most favorable to the State was sufficient for a reasonable jury to conclude Holston was guilty of the Ft. Pierce offenses. Ft. Pierce Wal-Mart Asset protection coordinator Leona Fair testified the following was taken during the incident on March 26-27: at least 300 DVDs with a minimum price of $9 or $10, and Vizio brand TVs at least thirty-two inches in size with a value of at least $1,000. (DE# 29-6 at 51-66). In addition, there was videotape evidence that Holston repeatedly entered the store and exited with large quantities of expensive electronic goods. (DE# 29-6 at 11, 46). The evidence was sufficient for a reasonable jury to conclude that Holston took property worth more than $300, and find him guilty of third-degree grand theft.

Holston's arguments regarding witness Eden fail for the same reason his claim about Boren failed in the preceding section. His claim should be denied for the same reasons.

<u>Naples</u>: Holston argues there is insufficient identification evidence because Bastien was tricked into identifying Holston, and the suspect wore a hat or cap. He complains that Lane Nelson provided insufficient testimony regarding value by failing to enumerate what was taken, provide a total count and total value missing, and because the witness admitted employees are known to

steal. He contends the video does not prove what was taken or its value. He argues this count should be reduced to a second-degree misdemeanor.

The evidence taken in the light most favorable to the State is sufficient for a reasonable jury to conclude Holston was guilty of the Naples offenses. Manager Linda Tempson testified the game cabinets were fully stocked and locked on March 14, 2006. (DE# 29-6 at 79-80). The offense was discovered as the suspects left the store's door and Tempson immediately investigated. She discovered six cases were broken, shelves were emptied, and she collected the remaining items and locked them in an office. Morning Manager Lane Nelson performed an inventory of the remaining games and created a report of what was missing: PSP2 games worth $14,618. (DE# 29-6 at 84). This was supported by videotape evidence that the suspect loaded up his cart with games and pushed past a greeter with a cart full of unpaid-for goods. (DE# 29-6 at 74). This evidence is more than sufficient to support a third-degree grand theft conviction for taking more than $300 worth of items.

(6)-(7)   <u>Faretta</u>

Holston contends the Collier and St. Lucie County circuit courts erred by permitting him to proceed *pro se* and by transferring the cases to Martin County for trial without conducting adequate <u>Faretta</u> hearings. He argues his convictions should be overturned and the relevant cases remanded for trial within thirty days to Collier and St. Lucie County circuit courts.

The Sixth Amendment provides that all criminal defendants are entitled to the assistance of counsel. U.S. Const. Amend. VI. A defendant can waive the fundamental right to counsel if he does so "knowingly and intelligently." <u>Johnson v. Zerbst</u>, 304 U.S. 458,

464-465 (1938); see Faretta v. California, 422 U.S. 806, 833 (1975). Although a defendant need not have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Faretta, 422 U.S. at 835. The Eleventh Circuit has interpreted Faretta to mean a trial court should hold a hearing to advise a criminal defendant on the dangers of proceeding pro se and make an explicit finding that he has chosen to represent himself with adequate knowledge of the possible consequences. See Fitzpatrick v. Wainwright, 800 F.2d 1057, 1065 (11th Cir. 1986); see also Fla. R. Crim. P. 3.111(d). The failure to hold a Faretta hearing is not error, however, if the record shows the defendant knowingly and voluntarily elected to represent himself. See Nelson v. Alabama, 292 F.3d 1291 (11th Cir. 2002); see also Waterhouse v. State, 596 So. 2d 1008 (Fla. 1992). Waiver presents a mixed question of law and fact. Brewer v. Williams, 430 U.S. 387, 403 (1977).

As a preliminary matter, it is unclear whether the courts were required to conduct Faretta hearings before considering Holston's motion to change venue and transfer the proceedings to Martin County. See United States v. Mitchell, 502 F.3d 931 (9th Cir. 2007) (suggesting venue discussions are not "critical stages" to which the right to counsel applies).

Even if Faretta hearings were required, any failure to conduct formal inquiries prior to transferring venue is harmless because Holston's waiver of counsel was unwaivering, knowing and intelligent. Holston was asked about his right to have counsel appointed and his desire to proceed pro se no less than seven

times. He cited <u>Faretta</u> and vehemently asserted his right to proceed *pro se* on each occasion. He has even accused Judge Schack of bias for continuing to offer counsel despite Holston's earier refusals. When the St. Lucie judge appointed the public defender as co-counsel to assist Holston, he immediately sought to have counsel discharged. He has also unwaiveringly asserted his desire to be tried in a consolidated proceeding in Martin County. He filed motions in each case, explained the Martin County jail had the best law library, and ensured the trial court and assistant state attorney had been appropriately appointed to proceed. His desire to proceed *pro se* and to do so in Martin County extended to the appellate level, where he represented himself and moved to have the appellate proceedings transferred to Martin County. The record reveals Holston understood his right to proceed without counsel, vehemently asserted it, and knowingly and voluntarily chose to have venue transferred for a consolidated trial. His present suggestions the waiver of counsel was not knowing and that he did not wish to be tried in Martin County, are disingenuous, refuted by the record, and should be rejected.

To the extent Holston suggests any of the Florida judges should have determined his competence to proceed, this claim likewise fails. Failure to comply with Florida's procedural rules regarding competency hearings implicates state law and is not cognizable on habeas review. <u>See</u> Fla. R. Crim. P. 3.210, 3.211; <u>Tejada v. Dugger</u>, 941 F.2d 1551 (11th Cir. 1991) (<u>quoting</u> <u>Carrizales v. Wainwright</u>, 699 F.2d 1053 (11th Cir. 1983)(questions of state law and procedure "rarely raise issues of federal constitutional significance. [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."). Nor has he implicated any federal constitutional right. The Due Process Clause

of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants. <u>James v. Singletary</u>, 957 F.2d 1562, 1569-70 (11th Cir. 1992) (citing <u>Pate v. Robinson</u>, 383 U.S. 375, 384-86, 86 S.Ct. 836, 841-42, 15 L.Ed.2d 815 (1966); <u>Dusky v. U.S.</u>, 362 U.S. 402 (1960)). The test for determining competence to stand trial is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." <u>Dusky</u>, 362 U.S. at 402. Here, Holston's competency to proceed was never in question. He never requested a competency hearing and disavowed a history of mental health problems. He always engaged the court appropriately and was aware of the nature of the proceedings, so none of the judges before whom he appeared would have had any cause to examine his competence *sue sponte*. <u>See</u>, <u>e.g.</u>, <u>Tiller v. Esposito</u>, 911 F.2d 575, 576 (11th Cir. 1990) (a court has a duty to hold a competency hearing *sua sponte* "if there is reasonable cause to believe that a defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."). Accordingly, any suggestion the Florida courts should have examined Holston's competency to proceed should have been examined is meritless and should be rejected.

(8)  <u>Information Amendments</u>

Holston contends the St. Lucie County informations were fatally defective in violation of due process. He complains that the State ambushed him by amending the informations after venue had changed, to alter the degree of offense, aggregate thefts as one scheme or course of conduct to increase the offense level and time frame in order to ambush Holston with surprise witnesses. He argued

the amendments prejudice him because they identity and substance of witnesses testimony was not disclosed and surprised him and, had he known, he would not have transferred the case to Martin County. He argues the case should be remanded for retrial on corrected informations.

Holston conclusively states the St. Lucie County informations were "fatally defective in violation of due process." (DE# 1 at 34). He fails to support that claim with any specific and substantive factual allegations. The informations cite the appropriate statutes, clearly identify the victims, and describe the offenses by tracking the relevant statutory language. Holston was on notice of the charges, victims, and time periods he was called upon to defend. The trial court was not deprived of jurisdiction and no due process error occurred.

Holston attacks the prosecutor's amendment of the informations likewise fail. Holston waived any attack on the propriety of amending the informations by agreeing with the amendment at trial. (DE# 29-8 at 18). Moreover, any alleged amendment error is not cognizable because it only raises an error of State law. 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a); see Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding errors that do not infringe a defendant's constitutional rights provide no basis for federal habeas corpus relief); Barclay v. Florida, 463 U.S. 939, 958-59 (1983) ("[m]ere errors of state law are not the concern of this court ... unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted). Questions of state law and procedure "rarely raise issues of federal constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is

involved.'" <u>Tejada</u>, 941 F.2d at 1560. Federal habeas corpus review of a state law claim is, therefore, precluded if no due process violations or facts indicating such violations are alleged. This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is "couched in terms of equal protection and due process." <u>Branan</u>, 861 F.2d at 1508. The sufficiency of a state indictment is an issue on federal habeas corpus only if the indictment was so deficient that the convicting court was deprived of jurisdiction. <u>Heath v. Jones</u>, 863 F.2d 815 (11th Cir. 1989); <u>DeBenedictis v. Wainwright</u>, 674 F.2d 841 (11th Cir. 1982). Holston presently attacks the process through which the prosecutor amended the informations to conform with the evidence as permitted by Florida law. Holston has failed to identify any federal constitutional deprivation and this claim is not cognizable on federal habeas review. <u>See</u> <u>Branan</u>, 861 F.2d at 1508 (federal habeas corpus review of a state law claim is precluded when a petition, which actually involves state law issues, is "couched in terms of equal protection and due process.").

(9)  <u>Jury Instructions</u>

Holston argues the trial court erred by instructing the jury that it was required to find Holston engaged in "one scheme or course of conduct" violated due process. He contends the State State sought to aggregate four thefts in case 06-2457, and two thefts in case 06-3766, to aggravate the offenses and increase Holston's punishment. He claims this aggravating fact was required to be found by the jury, and that the word "may" in the instructions resulted in a denial of due process. He contends he should have only received misdemeanor convictions.

Florida law provides that "[a]mounts of value of separate

properties involved in thefts committed pursuant to one scheme or course of conduct, whether the thefts are from the same person or several persons, may be aggregated in determining the grade of the offense." § 812.012, Fla. Stat. (10)(c); see Fla. Std. Jury Instr. (Crim.) § 14.1. Whether to aggregate offenses for purposes of trial is a matter of prosecutorial discretion. See, e.g., Snyder v. State, 715 So. 2d 367 (Fla. 5th DCA 1998) (statewide prosecutor had jurisdiction to consolidate four thefts into one grand theft count).

The aggregation instruction was appropriate under the facts of the case, tracks the statutory language and standard jury instructions, and correctly and completely sets forth Florida law. (DE# 29-9 at 60-61). The jury's finding of guilt is amply supported by the evidence. See Claims (3)-(5), supra. No error is apparent. That Holston apparently disagrees with the substance of Florida's theft law provides no basis for habeas review. See Branan, 861 F.2d at 1508 (federal habeas corpus review of a state law claim is precluded when a petition, which actually involves state law issues, is "couched in terms of equal protection and due process.").

(10) Judicial Misconduct

Finally, Holston appears to suggest Judge Schack was biased and intentionally frustrated pretrial interlocutory review of bail, erroneously denied motions to disqualify, and refused to enter written pretrial orders to prevent review.

The constitutional minimum established by the Due Process Clause requires that a criminal defendant receive a "fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." Bracy

v. Gramley, 520 U.S. 899, 904-05 (1997). It is well established that "judicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion." Liteky v. United States, 510 U.S. 540, 556 (1994); see also Byrne v. Nezhat, 261 F.3d 1075, 1103 (11th Cir. 2001). Likewise, "expressions of impatience, dissatisfaction, annoyance, and even anger" are not sufficient to trigger the recusal statute, and that judicial remarks during the course of a proceeding--even those that are "critical or disapproving of, or even hostile to, counsel, the parties or their cases" -- will not ordinarily support a bias motion. Liteky, 510 U.S. at 555-556. A judge's "ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration--remain immune." Id. An allegation of impartiality must be supported by some factual basis, and a motion for recusal cannot be based on unsupported, irrational or highly tenuous speculation. United States v. Cerceda, 188 F.3d 1291 (11th Cir. 1999).

Holston's suggestions the trial court was biased against him are entirely unsupported. His disagreement with the court's handling of its docket and ruling on pretrial matters does not constitute a showing of bias. Similarly, the court's adherence to Florida's procedural rules and denial of legally insufficient motions does not illustrate any bias. Nor does the court's justified reaction to Holston's exposure of the bailiff and other individuals in the courtroom to a contagious staph infection mean the court was biased. Liteky, 510 U.S. at 555-556. Holston has failed to demonstrate he was deprived of a fair proceeding and has made an insufficient showing to support habeas relief.

Accordingly, the State courts' denial of Holston's claims is not contrary to or an unreasonable application of clearly

established federal law, and is not based on an unreasonable view of the facts.

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied without an evidentiary hearing, and this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 13<u>th</u> day of December, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Reginald L. Holston, *pro se*
     DC# L27714
     South Bay Correctional Facility
     PO BOX 7171/E208
     600 US Highway 27 South
     South Bay, FL 33493-7171

     Helene Catherine Hvizd, AAG
     Office of the Attorney General
     1515 North Flagler Drive
     Suite 900
     West Palm Beach, FL 33401-2299